UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREDIT TIRE & WHEEL COMPANY, INC.,

       Plaintiff,

v.

Case No. 09-10789
Hon. Gerald E. Rosen

REGENCY CONVERSIONS, LLC, and
WB AUTOMOTIVE HOLDINGS, INC.,

       Defendants.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on          June 12, 2009

PRESENT: Honorable Gerald E. Rosen
                       Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Tredit Tire & Wheel Company, Inc. commenced this action in this Court on March 2, 2009, asserting a breach of contract claim against Defendant Regency Conversions, LLC ("Regency") arising from Regency's alleged failure to pay for products and services it received from Plaintiff, and also seeking to recover against Defendant WB Automotive Holdings, Inc. ("WBAH") for Regency's delinquent payments under theories of corporate veil-piercing, unjust enrichment, and tortious interference with contract. The Court's subject matter jurisdiction rests upon the diverse

citizenship of the parties.  *See* 28 U.S.C. § 1332(a)(2).

In lieu of answering the complaint, Defendant WBAH has filed a motion to dismiss each of the three counts of Plaintiff's complaint that are directed against WBAH.[1] Through this motion, WBAH argues primarily that it is merely a former secured lender of Regency that acquired an interest in Regency through foreclosure, and that, under these circumstances, there is no basis under Michigan law for imposing successor liability on WBAH for any debts owed by Regency.  In response, Plaintiff contends that its claims against WBAH are not based on a theory of successor liability, but instead rest principally upon veil-piercing theories arising from WBAH's alleged exercise of such a degree of control over Regency that this entity was a mere instrumentality of WBAH.

Having reviewed the parties' written submissions in support of and opposition to Defendant WBAH's motion, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide WBAH's motion "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL BACKGROUND

Defendant's motion rests almost exclusively upon the allegations of Plaintiff's

---

[1] Defendant Regency has yet to file an answer or otherwise appear in this case, and Plaintiff's breach of contract claim against Regency is not implicated in the present motion.

complaint.[2] Accordingly, the following recitation of facts derives solely from this source, with Plaintiff's allegations accepted as true for present purposes.

Defendant Regency Conversions, LLC ("Regency") is a Michigan limited liability company that manufactures conversion vans. For over twenty years, Plaintiff Tredit Tire & Wheel Company, Inc. has supplied specially designed and manufactured tires and wheels for the vehicles produced by Regency. Until recently, Regency's sole member was Tecstar Automotive Group, Inc. ("TAG"). In January of 2008, however, TAG failed to make interest payments owed to Defendant WB Automotive Holdings, Inc. ("WBAH") under a loan agreement between these two parties, resulting in the outstanding balance being accelerated and becoming immediately due. As a result, TAG and WBAH executed a foreclosure agreement under which WBAH became the owner of all of TAG's assets, including its membership interest in Regency.[3]

On January 22, 2008, WBAH loaned Regency $1 million in an effort to restructure it into a viable entity, and obtained a security interest in all of Regency's assets. WBAH also replaced Regency's president with its own employee, Kraig Knight, and "made the tactical and strategic decisions about and controlled Regency's business affairs." (First

---

[2] To the extent that Defendant seeks to modestly supplement this record, the Court addresses these efforts below, as pertinent to the disposition of Defendant's motion.

[3] WBAH contends that under the foreclosure agreement, it did not assume the liabilities incurred by Regency, but simply took possession of the assets pledged as collateral by TAG. Plaintiff, in contrast, alleges that WBAH did assume the liabilities of Regency and TAG's other subsidiaries, asserting that WBAH's president and general manager, Scott Ronan, acknowledged this fact during his deposition testimony in another case.

Amended Complaint at ¶¶ 19-20.) Due to rising gas prices and other factors, however, the restructuring of Regency did not succeed, and by September of 2008, it ceased making payments to Plaintiff and other suppliers and vendors. Although a WBAH representative, Mike Quibbel, assured Plaintiff in mid-January of 2009 that he and others on the "management team" wanted to retain Plaintiff in Regency's vendor base, and that it might be possible to work out a payment plan with Plaintiff going forward, Plaintiff alleges that WBAH had already begun planning to liquidate Regency in November of 2008, and that it had foreclosed on Regency's assets in early January of 2009. (*Id.* at ¶¶ 33-35.) Over Plaintiff's protests, Regency's assets were sold at auction on January 27, 2009.

Plaintiff alleges in its complaint that holds approximately $350,000 worth of inventory that was made to Regency's specifications, but for which Regency has failed to pay. Plaintiff further alleges that Regency owes it $195,921.38 for goods and services that have already been provided to Regency. Accordingly, Plaintiff brought the present suit on March 2, 2009, asserting a breach of contract claim against Defendant Regency. In addition, Plaintiff asks the Court to "pierce the corporate veil" and hold Defendant WBAH liable for Regency's alleged breach, on the grounds that WBAH disregarded the corporate form of Regency and exercised such dominion and control over Regency that this latter entity had no separate existence. Finally, in the remaining counts of the complaint, Plaintiff has asserted claims of unjust enrichment and tortious interference with contract against Defendant WBAH.

### III. ANALYSIS

A.      **The Standards Governing Defendant's Motion**

Through the present motion, Defendant WBAH seeks the dismissal under Fed. R. Civ. P. 12(b)(6) of each of the three claims asserted against it in Plaintiff's complaint. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to Plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). While this standard is "decidedly liberal," it nonetheless "require[s] more than bare assertions of legal conclusions." *Bredesen,* 500 F.3d at 527. Rather, Plaintiff's allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." 500 F.3d at 527. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." 500 F.3d at 527. The Court will apply these standards in resolving Defendant's motion.

B.      **Plaintiff Has Alleged a Sufficient Factual Basis for the Imposition of Liability Upon Defendant WBAH for Defendant Regency's Alleged Breach of Contract.**

In count II of its complaint, Plaintiff seeks to hold Defendant WBAH liable for Defendant Regency's alleged breach of its contractual obligation to Plaintiff. This claim against WBAH rests upon a theory of "piercing the corporate veil," and is supported by allegations that WBAH exercised control over Regency's business operations and made

5

the strategic decisions about Regency's business affairs. In seeking the dismissal of this claim, WBAH argues that the theory of "successor liability" purportedly being pursued by Plaintiff is not viable, and that there is no basis under Michigan law for holding a secured lender liable for the contractual obligations of a company whose assets the lender has acquired through foreclosure. In response, Plaintiff denies that its claim against WBAH rests on a theory of successor liability, and insists that this claim instead is based upon well-established Michigan law that permits one company to be held liable for another company's contractual breach under a "veil piercing" theory. The Court finds that Plaintiff has the better of the argument on this point.

Under Michigan law,[4] a company's corporate form, or "corporate veil," may be pierced "where an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.,* 475 F.3d 783, 798 (6th Cir. 2007) (internal quotation marks, alteration, and citations omitted). In order to reach past this separate corporate existence and impose one company's liability upon another, a plaintiff must show: (1) that the corporate entity to be disregarded was a mere instrumentality of another entity; (2) that this corporate entity was used to commit a fraud or wrong; and (3) that the plaintiff suffered an unjust loss. *Servo Kinetics,* 475 F.3d at 798; *see also Foodland*

---

[4]The parties evidently agree that Michigan law governs Plaintiff's claims against WBAH, and the Court proceeds in accordance with this shared understanding in resolving Defendant's motion.

*Distributors v. Al-Naimi,* 220 Mich. App. 453, 559 N.W.2d 379, 381 (1996). A court's decision whether to pierce the corporate veil "is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven." *Servo Kinetics,* 475 F.3d at 798; *see also Kline v. Kline,* 104 Mich. App. 700, 305 N.W.2d 297, 299 (1981). "In determining whether the corporate entity should be disregarded and the parent company held liable on the contracts of its subsidiary because the latter served as a mere instrumentality or adjunct of the former, each case is *sui generi[ ]s* and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.,* 317 Mich. 233, 26 N.W.2d 757, 761 (1947).

In *Servo Kinetics,* 475 F.3d at 798-800, the Sixth Circuit reversed an award of summary judgment in favor of a parent company whose subsidiary had breached a contract with the plaintiff. In so ruling, the court held that a reasonable jury could find that the subsidiary, TSS, was a mere instrumentality of the parent corporation, Moog, in light of the evidence that Moog had dismantled TSS for its own benefit, integrated TSS's business and workforce into its own, acquired TSS's assets without payment of compensation to TSS, and installed its own employees as the directors of TSS. The court explained that "[w]here the assets of the subsidiary are employed for the benefit of the controlling corporation, in a manner other than as a benefit to the controlling corporation in its capacity as a shareholder, that fact supports finding that the subsidiary was a mere instrumentality of the parent." *Servo Kinetics,* 475 F.3d at 799. The court further held that the breach of the plaintiff's contract with TSS would qualify as the requisite "fraud or

7

wrong" that would justify piercing TSS's corporate veil. 475 F.3d at 799-800.

Here, Plaintiff has alleged facts which, if proven, would permit the conclusion that Regency became a mere instrumentality of WBAH. Plaintiff alleges that after WBAH became the sole member of Regency, it replaced the company's president with its own employee, began running the company, and "made the tactical and strategic decisions about . . . Regency's business affairs." (First Amended Complaint at ¶¶ 18-20.) Plaintiff further alleges that WBAH made the decision to liquidate Regency, and that WBAH determined which of Regency's vendors would be paid. (*Id.* at ¶¶ 31, 35.) Plaintiff also points to correspondence in which WBAH's representative, Mr. Quibbel, used terms like "our focus," "our vendor base," and "our creditors" when referring to Regency's plans, business operations, and financial condition. (*Id.* at ¶ 34.) These allegations provide a sufficient basis upon which Plaintiff could satisfy the first prong of the test for veil-piercing under Michigan law.

Nonetheless, WBAH contends that Plaintiff cannot satisfy the second, "fraud or wrong" element of this test absent allegations that would sustain a common-law claim of fraud. In *Servo Kinetics,* 475 F.3d at 799-800, however, the court held that a breach of contract can be a sufficient "wrong" to warrant piercing the corporate veil. Similarly, in *Herman,* 26 N.W.2d at 762-63, the Michigan Supreme Court found that a parent company was properly held liable for the contractual obligations of subsidiaries over which it exercised complete "domination and control," despite "the lack of actual fraud" perpetrated by the parent company. Thus, Plaintiff's allegations of WBAH's central role

in Regency's alleged breach of its contractual obligations to Plaintiff are sufficient to establish this element of the veil-piercing standard.

As to the third, "unjust loss" element of the test for veil-piercing, WBAH insists that Plaintiff's position was improved, and not harmed, by virtue of WBAH's involvement with Regency's business operations and infusion of funds. As evidence of this, WBAH points to Plaintiff's acknowledgment in its complaint that Regency had already fallen behind in its payments to Plaintiff before WBAH acquired its interest in Regency. Yet, the complaint further alleges that Regency continued to pay down this outstanding debt for a few months after WBAH became involved in Regency's business operations, but that these payments ceased when WBAH assumed control over Regency's "checkbook" and began to determine which vendors should be paid. (First Amended Complaint at ¶ 31.) In addition, Plaintiff alleges that WBAH representatives led it to believe that Regency's relationship with Plaintiff would continue, when in fact WBAH had already decided to liquidate Regency's assets. These allegations would permit the conclusion that WBAH's alleged exercise of control over Regency resulted in an "unjust loss" to Plaintiff.

Finally, and more generally, WBAH reads Plaintiff's complaint as advancing a theory of "successor liability" against WBAH, and it contends that the imposition of such liability would be unprecedented where, in its view, it is merely a secured lender that acquired an interest in Regency's assets (and not its liabilities) through a UCC-based foreclosure. Yet, regardless of whether the evidence might ultimately vindicate WBAH's

assertion on this point, the allegations of the complaint are controlling at this juncture, and these allegations paint WBAH as far more than a secured creditor that foreclosed on the assets of a defaulting borrower. As explained, Plaintiff has alleged that WBAH exercised a significant degree of control over Regency's business operations and "made the tactical and strategic decisions about" Regency's business affairs. This is not a claim of "successor liability," but rather an effort to impose liability on WBAH for harm it caused through the use of Regency as a mere instrumentality of WBAH's own interests. As is evident from the foregoing discussion, the Michigan courts have recognized precisely this "veil-piercing" theory of liability.

In any event, even if Plaintiff's claims against WBAH rest in part upon a theory of successor liability, the Michigan courts have recognized an exception to the general rule against successor liability when the successor company expressly or impliedly assumes liability for its predecessor's obligations. *Foster v. Cone-Blanchard Machine Co.,* 460 Mich. 696, 597 N.W.2d 506, 509 (1999). According to Plaintiff's complaint, WBAH's president, Mr. Ronan, has acknowledged under oath that WBAH assumed the liabilities of TAG's subsidiaries (which would necessarily include Regency) when it foreclosed on TAG's assets. (*See* First Amended Complaint at ¶¶ 15-17.) While WBAH contests this reading of Mr. Ronan's deposition testimony and invites the Court to review the entire transcript of this deposition and draw its own conclusions, it is enough to observe, at the present juncture, that Plaintiff's interpretation of this testimony is at least plausible, such that Plaintiff should be permitted to develop further evidentiary support for this theory of

liability. Consequently, viewing the allegations of the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has set forth a viable basis for holding WBAH liable for Regency's alleged breach of its contractual obligations to Plaintiff.

**C.    WBAH Has Not Identified Any Basis for Dismissing Plaintiff's Claim of Unjust Enrichment.**

In count III of its complaint, Plaintiff asserts a claim of unjust enrichment against Defendant WBAH. Although WBAH, through its present motion, purports to seek the dismissal of each of the claims asserted against it, including Plaintiff's claim of unjust enrichment, the brief in support of WBAH's motion fails to advance any argument whatsoever as to why Plaintiff has failed to state a viable claim of unjust enrichment.[5] Accordingly, the Court agrees with Plaintiff that any such challenge has been abandoned.

**D.    Plaintiff's Allegations Are Sufficient to Sustain a Tortious Interference Claim.**

As an alternative to Plaintiff's effort to impose liability upon WBAH through a "veil-piercing" theory, Plaintiff asserts in count IV of its complaint that WBAH tortiously interfered with the contractual relationship between Plaintiff and Regency. Under Michigan law, the elements of a claim of tortious interference with contract are "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Services, Inc.,* 268 Mich. App. 83, 706 N.W.2d 843, 848-49 (2005). Through the present

---

[5]To the extent that WBAH means to suggest that this claim, like Plaintiff's other claims against WBAH, should be dismissed as based upon an untenable theory of "successor liability," the Court already has explained that it does not share this view of Plaintiff's complaint.

motion, Defendant WBAH contests only the third of these elements — namely, whether Plaintiff has alleged facts showing that WBAH unjustifiably instigated Regency's breach of contract.

To establish this element of a tortious interference claim, a plaintiff must show the interference was "improper" by showing either "(1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading [the plaintiff's] contractual rights or business relationship." *Advocacy Org. for Patients & Providers v. Auto Club Insurance Ass'n,* 257 Mich. App. 365, 670 N.W.2d 569, 580 (2003). In this case, Plaintiff contends that it can show both sorts of "improper" interference. First, Plaintiff points to the complaint's allegations that WBAH, as Regency's sole member, knew about Regency's contract with Plaintiff and deliberately and intentionally caused Regency to breach its contractual obligations. By allegedly triggering this breach while at the same time reaping the benefits of Plaintiff's fulfillment of its part of the contractual bargain, Plaintiff contends that WBAH could permissibly be found to have engaged in conduct that was "wrongful per se." Next, even assuming that WBAH used lawful means to bring about Regency's alleged breach of its contractual obligations, Plaintiff asserts that it can establish an improper motive for this conduct through the complaint's allegations (i) that WBAH took a security interest in all of Regency's assets to secure a $1 million loan that likely was much less than the collateral's value, and (ii) that WBAH subsequently exercised its control over Regency's operations and business decisions to trigger Regency's default on

the loan and permit a foreclosure that left Regency unable to pay its creditors. In Plaintiff's view, this effort to strip Regency of its assets, while at the same time denying any obligation to assume Regency's liabilities, suggests an improper motive for WBAH's actions. *See Wilkinson v. Powe,* 300 Mich. 275, 1 N.W.2d 539, 542 (1942) (finding that the requisite "malice" can be established through evidence that the defendant persuaded a third party to breach its contract with the plaintiff "for the indirect purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff" (internal quotation marks and citation omitted)).

Against these allegations, WBAH contends only that its actions were motivated by legitimate business reasons, as it justifiably declined to "throw good money after bad" by loaning still more money to a failing venture so that it could pay its existing debts. Yet, this question as to WBAH's justification for its actions presents a factual issue that cannot be resolved on a motion to dismiss. *See Wilkinson,* 1 N.W.2d at 542. Consequently, Plaintiff will be permitted to go forward with its tortious interference claim.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant WB

Automotive Holdings' April 27, 2009 motion to dismiss (docket #12) is DENIED.

                              s/Gerald E. Rosen
                              Chief Judge, United States District Court

Dated: June 12, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 12, 2009, by electronic and/or ordinary mail.

                              s/Ruth Brissaud
                              Case Manager